DUNGAN et al. v. POTLATCH LUMBER CO.

No. 6166.

Circuit Court of Appeals, Ninth Circuit.

Oct. 6, 1930.

As Modified on Denial of Rehearing Nov. 3, 1930.

O. C. Moore and Bruce Blake, both of Spokane, Wash., for appellants.

Wakefield & Witherspoon, of Spokane, Wash., and Gray & Potts, of Coeur d'Alene, Idaho, for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and NETERER, District Judge.

The following opinion, prepared by Judge DIETRICH, is adopted as the opinion of the court by WILBUR, Circuit Judge, and NETERER, District Judge.

PER CURIAM.

In 1925, the appellants, plaintiffs below, were the owners of certain tracts of timber land and contemplated the acquisition of others, all in Latah county, Idaho, and appellee was the owner of and was operating a large sawmill near by. On November 28 of that year they entered into a written contract by the terms of which the appellants agreed to cut and deliver in the form of lumber at points to be designated by the appellee all the white pine timber standing on the lands they then owned or should acquire during the life of the contract, which would "cut to Grade No. 3 Common or better, rough Idaho White Pine Lumber," with the proviso that grade No. 3 common should not exceed 25 per cent. of the total cut and delivery. It was estimated that the timber covered by the contract would cut approximately 9,000,000 feet, board measure, and the stipulated price was

$32.50 per thousand, which was to be paid in part at the rate of $31.50 per thousand, on or before the 8th day of each calendar month for deliveries made during the preceding month. Payment of the other $1 per thousand was to be made upon final settlement and upon satisfactory proof that appellant had discharged all claims which might constitute liens upon the logs and had complied with laws and regulations touching fire hazards and other conditions particularly specified in the contract.

Upon completion of the operation it was found that appellants had cut and delivered a total of 6,857,307 feet, and that included therein were 780,851 feet of No. 3 common in excess of the 25 per cent. permitted by the contract. For this excess appellants claimed payment at the contract rate of $32.50 per thousand and appellee declined to recognize any liability therefor in excess of the reasonable value or going market price of that grade. Hence the suit.

The single question for consideration is whether the court below erred in sustaining appellee's position. It is to be noted that the contract does not fix the price to be paid for No. 3 common in the event of an excess of that grade. And, hence, unless the contract price for mixed grades is applicable, the only reasonable alternative is that recognized below, namely, the reasonable value as measured by the going market price. In executing the contract, plainly the parties did not contemplate the contract price for the excess, and we are unable to accept appellants' contention that by receiving it the appellee waived objections it might have raised and impliedly agreed to pay the contract price. It could not reject the excess of each small delivery; that would have been impracticable. Nor at the end of the month's deliveries was it feasible to reject the excess; it had received logs and manufactured them into lumber. Had it declined to make payment for the month's deliveries at the contract rate, appellants might well have responded that the contract classification was intended to apply only to the entire delivery and that the following month or months might show a sufficient excess of the higher grades to bring the total delivery up to the contract classification. And that, we think, is the more reasonable view. The contract contemplated the delivery of the entire cut from the lands referred to; whether the run of No. 3 common would or would not be excessive could not be determined until the operation was complete. It may well be as-

sumed that any attempt on the part of appellee to reject apparent or temporary excesses from day to day or month to month would have been met with a vigorous protest from appellants.

Affirmed.